IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 4, 2013

## MARIO GREEN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 04-03180    Paula Skahan, Judge**

**No. W2012-01099-CCA-R3-PC  -  Filed June 26, 2013**

Mario Green ("the Petitioner") was convicted by a Shelby County jury of two counts of second degree murder. The trial court merged the convictions and sentenced the Petitioner to twenty years' incarceration. The Petitioner subsequently filed for post-conviction relief, which the post-conviction court denied following an evidentiary hearing. The Petitioner now appeals, arguing that he received ineffective assistance of counsel at trial. After reviewing the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Sean Hord, Memphis, Tennessee, for the appellant, Mario Green.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy Weirich, District Attorney General; and Doug Carriker, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Petitioner and Dimecos Jones were involved in a shooting that occurred in December 2003. As a result, both were indicted for first degree premeditated murder, first degree felony murder, and especially aggravated robbery. They were tried separately. Following a jury trial, a jury convicted the Petitioner of two counts of second degree murder. The trial court merged the two convictions and sentenced the Petitioner to twenty years' incarceration. This Court affirmed the judgments of the trial court on direct appeal. See State

v. Mario Green, No. W2006-01383-CCA-R3-CD, 2008 WL 2331020, at *6 (Tenn. Crim. App. June 5, 2008), perm. app. denied (Tenn. Dec. 22, 2008). We repeat below the facts presented in this Court's opinion resolving the Petitioner's direct appeal in order to assist in the resolution of this proceeding:

> [T]he evidence at the [Petitioner]'s trial revealed that the victim regularly sold drugs in The Corners apartment complex in Memphis. Christen Williams also sold drugs in the apartment complex, and the two often clashed over their drug territory. On December 13, 2003, Williams "got into it" with the victim and telephoned her friend, the [Petitioner], for help. The [Petitioner] told Williams he would speak with the victim. That night, Williams drove the [Petitioner] and Jones to the apartment complex in order for the [Petitioner] to talk with the victim. The [Petitioner] and Jones saw the victim and got out of Williams' car. Williams said that the [Petitioner] put a .9 millimeter gun "on his hip" and that Jones put a .357 "on his hip." Williams drove to the back of the apartments and heard a gunshot. The [Petitioner] and Jones returned to Williams' car, and the three of them returned to the [Petitioner]'s home. There, Jones told Williams that he took money and drugs out of the victim's pocket. At the [Petitioner]'s trial, Williams testified that the [Petitioner] told her before the shooting that he was going to fight the victim, but she acknowledged telling the police that the [Petitioner] told her he was going to kill the victim. She also acknowledged that she had been charged with facilitation of first degree murder in connection with the victim's death and that her case was still pending. She said she had not been promised anything in exchange for her testimony against the [Petitioner].

> Kevin Starks testified that in December 2003, he lived in The Corners apartment complex and saw the victim there every day. In the early morning hours of December 14, 2003, Starks returned home and saw the victim talking with the [Petitioner] and another man in the parking lot. Starks heard the [Petitioner] say, "No, fuck that shit, tonight he's got to die, tonight" and saw the [Petitioner] pull out a pistol. The second man also appeared to have a gun, and Starks heard him say, "Fuck all this talking, let's get this shit over with." Starks walked toward his apartment, began telephoning 911, and heard a gunshot. He went inside his apartment, looked out a window, and saw the victim lying on the ground. He also saw a shadow over the victim "like maybe someone might be going in his pocket." Starks said he never saw the [Petitioner] point a gun at the victim.

> Kevin Cochran, the victim's friend, testified that he called the victim's cellular telephone about midnight on December 14, 2003. Someone other than

the victim answered the phone and told Cochran that the victim was busy. Cochran stated that the person put the telephone down and that he heard noise and arguing in the background. Cochran heard someone say, "Give me the stuff, give me the stuff, get out of the car, lay down on the ground" and heard someone tell the victim, "Lay down, face down on the ground." Cochran left his job and drove to The Corners apartment complex because he knew the victim would be there. When he arrived, he saw the victim lying on the ground and an ambulance.

Marcus Tubbs testified that he was with the victim on the night of December 13, 2003, and rode with the victim to the apartment complex. The [Petitioner] and Jones flagged down the victim, and the victim drove over to them. The victim began talking with the [Petitioner], and Jones pulled out a gun and told the [Petitioner] to get out of the way. The victim got out of his car, and Jones told the victim to lie on the ground and checked the victim's pockets and shoes for money. The [Petitioner] pulled out a gun and told Tubbs to get out of the car. At some point, the victim's cellular telephone rang, and Tubbs answered the phone. Tubbs did not hang up the phone, and the [Petitioner] snatched the phone from him. Tubbs heard Jones say, "Should I do him, should I do him[?]" but did not hear the [Petitioner]'s response. He then saw Jones walk up to the victim and shoot the victim in the back of the head. After the shooting, the [Petitioner] and Jones ran from the scene.

At the crime scene, the police found the victim lying on the ground, a blood puddle, two black tennis shoes, and bullet fragments. Later that day, officers went to the [Petitioner]'s home and knocked on the door, but no one answered. Believing someone was in the house, the officers left the home but watched it from a distance. A car arrived, and Jones came out of the house and got into the car. Officers stopped the car; arrested Jones; and found a .357 Magnum revolver, a .9 millimeter pistol, and ammunition on the front seat. Ballistics testing on the guns was compared with the bullet fragments recovered from the crime scene and revealed that some of the bullet fragments were fired from the revolver. None of the fragments were fired from the pistol. An autopsy revealed that the victim died from a gunshot wound to the top of his head. The victim also had a laceration on his head caused by blunt force trauma, and a forensic anthropologist concluded that he received the laceration before the shooting. The [Petitioner] turned himself in to police on December 16, 2003.

Id. at *1-2.

The Petitioner subsequently filed a petition for post-conviction relief, claiming ineffective assistance of counsel at trial ("trial counsel"). At the post-conviction hearing, the Petitioner testified that he retained trial counsel after his indictment. The Petitioner contended that trial counsel was ineffective. The Petitioner felt that his meetings with trial counsel were not long enough for the Petitioner to understand the charges against him, and he believed trial counsel did not explain the charges fully due to trial counsel's time restraints regarding other clients. Trial counsel explained the charges of felony murder and facilitation to the Petitioner but did not explain criminal responsibility until after jury selection was complete. According to the Petitioner, trial counsel was "surprised" when the Petitioner was charged with criminal responsibility after jury selection. The Petitioner did not discuss potential witnesses with trial counsel before the trial, even though he gave the names of two potential witnesses to a private investigator. Those witnesses would have testified that, although the Petitioner was at the scene of the crime, he did not shoot anyone.

On cross-examination, the Petitioner acknowledged that he did not have a set number of expected visits with trial counsel and that trial counsel met with him at least three times before proceeding to trial. The Petitioner also acknowledged that he was at the scene of the crime and that his potential witnesses would have confirmed that he was at the scene. The Petitioner claimed to rely on advice from trial counsel when deciding whether to testify on his own behalf.

Trial counsel testified that he had been practicing law for almost thirty years at the time of the post-conviction hearing and was certified both as a criminal trial specialist by the State of Tennessee and as a criminal trial advocate by the National Board of Trial Advocacy. Typically, trial counsel tried to settle cases but prepared for trial in case settling was not an option. He had tried murder cases in Tennessee, Virginia, and Texas. Trial counsel had no recollection of the Petitioner's mentioning potential witnesses to him but elaborated that, if there were potential witnesses, he typically had a private investigator interview any such witnesses to determine if their testimony was beneficial to the case.

Trial counsel stated that it was typical for him to explain his clients' right to testify at trial and confirmed that he usually advised clients to wait until hearing the State's evidence in a criminal trial before making a decision about whether his clients would testify on their own behalf. Trial counsel explained the charges and the relevant sentences to the Petitioner. He could not recall the State's offering a plea bargain to the Petitioner at any time during the trial proceedings. According to trial counsel, he did not present evidence of mitigating factors for sentencing in the Petitioner's case because an agreement was reached regarding the sentence, and, thus, there was no sentencing hearing. Trial counsel generally did not file evidence of mitigating factors before a sentencing hearing because filing prior to the hearing is not required. On cross-examination, trial counsel admitted that he did not recall specifically having a conversation with the Petitioner about criminal responsibility, but he

felt "very comfortable" in stating that such a conversation took place because Jones already had been convicted of first degree murder at the time of the Petitioner's trial, meaning that criminal responsibility was "the only theory that could hold [the Petitioner] responsible, is that he's responsible for [Jones'] shooting the [victim]."

The post-conviction court denied the petition for post-conviction relief. The court's order noted "three specific deficiencies that the Petitioner cites as support for his allegations of ineffective assistance of counsel." The deficiencies were:

1. Counsel failed to confer with Petitioner without delay and as often as necessary in order to elicit matters of a defense and/or to ascertain whether that potential defense was unavailable in relation to the facts and circumstances of his case.

2. Counsel failed to investigate the facts and circumstances of his case in relation to the law, both factually and legally.

3. Counsel failed to present mitigating evidence in the penalty phase of the case, constituting a failure of the duty to investigate and make adequate preparation for trial in both the guilt and sentencing phases.

Regarding trial counsel's alleged deficiency in conferring with the Petitioner, the post-conviction court held that trial counsel had acted within the range of reasonable professional assistance, based on trial counsel's testimony about his experience, certifications, and teaching experience. The court also held that the Petitioner

failed to establish that Trial Counsel rendered ineffective assistance of counsel in Trial Counsel's degree of preparation or representation. Trial Counsel met with Petitioner and discussed the matters presented by Petitioner's case in a manner within the range of professional assistance, and Trial Counsel's failure to address the criminal responsibility issue prior to trial does not constitute ineffective assistance of counsel.

The post-conviction court also held that the Petitioner "failed to establish that Trial Counsel failed to properly investigate the case such that his counsel fell below the standards of acceptable legal representation, [or] that any prejudice to Petitioner's case resulted from any such deficiency in investigation of the case." Trial counsel and the Petitioner's statements that an investigator met with the Petitioner, along with trial counsel's reliance on the transcripts of Jones' trial, led the court to conclude that trial counsel sufficiently investigated the case.

Finally, the post-conviction court did not grant the Petitioner relief on the claim that trial counsel failed to file evidence of mitigating factors at sentencing. The post-conviction court noted that the Petitioner did not present any specific mitigating factors that could have been raised. Moreover, the court stated that, even if he had, there was no sentencing hearing in this case. Thus, there was no opportunity to introduce such evidence. Accordingly, the post-conviction court held that the Petitioner was not entitled to relief on this ground. Following the court's denial of post-conviction relief, the Petitioner timely appealed to this Court.

## Analysis

### *Standard of Review*

Post-conviction relief is available only when the Petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the Petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

### *Ineffective Assistance of Counsel*

The Petitioner argues on appeal that he was denied effective assistance of counsel. The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[1] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, whose advice is "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington,

---

[1] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

466 U.S. 668, 687 (1984); <u>see also</u> <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. <u>See</u> Tenn. Code Ann. § 40-30-103; <u>Pylant</u>, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the Petitioner must establish two prongs: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996). The Petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. <u>Goad</u>, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. <u>Id.</u>

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" <u>Vaughn v. State</u>, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting <u>Strickland</u>, 466 U.S. at 688)). Our supreme court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

<u>Baxter</u>, 523 S.W.2d at 934-35 (quoting <u>Beasley v. United States</u>, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." <u>Howell v. State</u>, 185 S.W.3d 319, 326 (Tenn. 2006) (citing <u>Strickland</u>, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>State v. Honeycutt</u>, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting <u>Strickland</u>, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. <u>Rhoden v. State</u>, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the Petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different ." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

Although the post-conviction court addressed three separate alleged deficiencies as the basis for Petitioner's ineffective assistance claim, the Petitioner has asserted only one deficiency on appeal. The Petitioner argues that trial counsel's failure to alert the Petitioner to the possibility of conviction under a theory of criminal responsibility constituted deficient performance by trial counsel and prejudiced the proceedings. Further, he contends that, had he known that the State could convict him on a theory of criminal responsibility, he "might not have taken his case to trial."

Turning first to the prejudice prong, the Petitioner claims that he "might not have taken his case to trial" had he known about a possibility of conviction under a theory of criminal responsibility. However, he has not presented any evidence that he would not have gone to trial given this knowledge. Trial counsel testified that he typically tried to settle cases. Nothing in the record indicates that trial counsel acted differently in this case, and the Petitioner did not testify that he sought a plea bargain before trial. Moreover, there is nothing to indicate that a plea bargain was offered. Trial counsel testified that he did not remember a plea deal being offered, and the Petitioner did not testify that a plea offer was made.

Even if we assume that a plea bargain was offered, "[i]n the context of a Petitioner who seeks to reinstate . . . a plea offer, the Petitioner must show that there is a reasonable probability that he or she would have accepted the plea had it been properly communicated to him or her." State v. Garrison, 40 S.W.3d 426, 431 (Tenn. 2000). The Petitioner's contention that he "might not have" gone to trial does not constitute clear and convincing evidence that he would have pleaded guilty to the charges against him. The Petitioner did not testify that he would have accepted a plea deal at his evidentiary hearing. Thus, the Petitioner has not presented any evidence supporting a showing that he was prejudiced by trial counsel's failure to discuss criminal responsibility with him before trial.

We acknowledge that the post-conviction court did find that trial counsel did not discuss criminal responsibility with the Petitioner before trial began. Despite its finding, the post-conviction court held that this failure did not rise to the level of deficient performance. Since we have determined that the Petitioner has failed to establish prejudice, we decline to

address whether trial counsel's representation was deficient on this issue. <u>See</u> <u>Goad</u>, 938 S.W.2d at 370.  The Petitioner is entitled to no relief on this issue.

## CONCLUSION

Based on the reasoning above, the Petitioner has failed to establish that he is entitled to post-conviction relief.  Therefore, the judgment of the post-conviction court is affirmed.


_____
JEFFREY S. BIVINS, JUDGE